UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. 06-318 (ESH) |
| : | Motions Date: May 4, 2007 |
| RICARDO SELDON, : | |
| : | |
| Defendant. : | |
| _____: | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE**

The United States of America (United States" or "Government"), by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Ricardo Seldon's Motion to Suppress Tangible Evidence (hereinafter "Defendant's Motion"). As grounds for its opposition, the Government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Defendant is charged by indictment with one count of Unlawful Possession with Intent to Distribute Five Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and one count of Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). These charges are based upon evidence recovered from the execution of a search warrant at defendant's residence at 714 Oglethorpe Street, N.E., Washington, D.C., on October 25, 2005.

On October 17, 2005, just over a week prior to the execution of the search warrant, Metropolitan Police Department ("MPD") Officer Kristen Thorne submitted a sworn affidavit in support of an application for the search warrant to search the entire premises of 714 Oglethorpe

Street, N.E.  See Affidavit in Support of an Application for Search Warrant ("Affidavit"), at ¶ 2. In her affidavit, Officer Thorn stated that she had contacted a confidential informant ("CI") "[i]n the past seventy-two hours regarding a citizen complaint about narcotics being sold from within 714 Oglethorpe Street, [N.E.]" The affidavit further stated that the CI had provided reliable information in the past "resulting in the arrest of numerous individuals for felony and misdemeanor narcotics offenses"; had provided information which has "resulted in the seizure of crack cocaine, heroin, and firearms"; and had never provided inaccurate information.  Id. at ¶ 3. In addition, the affidavit stated that in the officer's experience, those who distribute narcotics "frequently maintain on their premises . . . their narcotics, paraphernalia for packaging, [and] proceeds from narcotics sales."  Id.

The affidavit further reported that Officer Thorne met with the CI and arranged for the CI to make a controlled purchase of drugs from within 714 Oglethorpe Street, N.E.  Id. at ¶ 3.  Prior to the buy, a thorough search of the CI was conducted for the location of any drugs or money, with negative results.  Id.  The CI was then given a sum of MPD pre-recorded funds to use to make the purchase.  Id.  Officer Thorne and another officer then watched as the CI walked towards the residence and eventually went inside.  Id.  The CI did not come in contact with anyone before he reached the residence and went inside.  Id.  Within just a short time, the CI exited the residence and walked directly to Officer Thorne, without coming in contact with anyone.  Id.  Once he returned, the CI handed Officer Thorne a loose rock of suspected crack cocaine, which later field-tested positive for the presence of cocaine.  Id.  The CI was again searched for any contraband, which again produced negative results.  Id.  The CI then related to Officer Thorne that it was met by an individual "known as Ricardo" at the front door of the

residence.  Id.  The CI was then permitted to enter the residence and once inside he handed "Ricardo" the pre-recorded MPD funds in exchange for the crack.  Id.

The affidavit also reported that a short time after the controlled buy took place, Officer Thorne set up nighttime surveillance outside of 714 Oglethorpe Street, N.E.  Id. at ¶ 4.  During the surveillance, Officer Thorne observed heavy pedestrian traffic going in and out of the residence.  Id.  Further, given these observations, the controlled buy that took place a short time before between the CI and "Ricardo" inside the residence, and her past narcotics investigative experience, Officer Thorne concluded that there were illegal narcotics, namely cocaine, stored within the residence.  Id.

A judge of the Superior Court of the District of Columbia issued a search warrant on October 17, 2005, finding probable cause to believe that there were narcotics inside 714 Oglethorpe Street, N.E.  On October 25, 2005, officers of MPD executed the warrant, seizing among other things a 9mm handgun, approximately 25 grams of crack cocaine, a video monitor which was wired to a surveillance camera that faced the front of the residence, and mail matter and a driver's license belonging to defendant.  All of these items were located in defendant's bedroom.[1]  Defendant was eventually charged with and indicted for offenses based solely upon the evidence recovered by police during the search of his residence pursuant to the warrant on October 25, 2005.

Defendant now moves this Court to suppress the evidence recovered from his bedroom which resulted from the execution of the search warrant.  Specifically, defendant avers that the

---

[1]  This information was corroborated by defendant's grandparents, who were home at the time the search warrant was executed.  Defendant was not at home at the time but turned himself in to police several days later.

affidavit in support of the application for the search warrant does not establish probable cause for the issuance of a warrant. Defendant's Motion, at 3. Defendant's motion lacks merit and therefore should be denied.

## II. ARGUMENT

In his motion, defendant argues specifically that the information contained in the affidavit amounts to "conclusions by an affiant [which] are not facts." Defendant's Motion, at 3. Further, defendant argues that "[w]hile Investigator Kristen Thorne's background is exemplary, the assertions and conclusions in support of the affidavit . . . do[] not establish probable cause to search the dwelling." Id. However, Officer Thorne's affidavit informed the judge that a controlled buy was conducted in which a confidential informant of proven reliability entered defendant's residence with police funds and emerged a short time later with a rock of cocaine. The affidavit also indicated that the CI told police that he had purchased the substance from the residence from a man whom the CI knew as "Ricardo." Furthermore, the affidavit contained corroborative information that the police watched as the CI entered and exited the residence and that, from the time the CI was with the police until it returned a short while later with the rock of crack, the CI did not have contact with anyone else. In addition, the affidavit informed the judge that after the controlled buy was made, the officer conducted nighttime surveillance of the residence, and she saw heavy pedestrian traffic going into and out of the residence.

The Supreme Court has stated that the determination of probable cause calls for a "practical, commonsense inquiry." Illinois v. Gates, 462 U.S. 213, 238 (1983). Further, "[a] judicial officer who is considering an application for a search warrant must decide whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and

4

'basis of knowledge' of persons supplying hearsay information, <u>there is a fair probability that contraband or evidence of a crime will be found in a particular place</u>." <u>United States v. Warren</u>, 42 F.3d 647, 652 (D.C. Cir. 1995) (quoting <u>Gates</u>, 462 U.S. at 238; emphasis supplied). The affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause for issuance of the search warrant." <u>Gates</u>, 462 U.S. at 239.

In the instant case, given the all information contained in Officer Thorne's affidavit, it is evident that there was "a fair probability" that drugs or evidence of drug distribution would be found in defendant's residence. Indeed, information that a controlled buy took place inside the residence just several days before the warrant was executed, and the officer's own nocturnal observations of heavy pedestrian traffic which, based upon her training and experience as a narcotics investigator, indicated that drug activity was taking place inside the residence, clearly provided the judge with "a substantial basis for determining the existence of probable cause" in the warrant. In <u>Warren</u>, the D.C. Circuit Court of Appeals reiterated its long-standing principle that "police establish probable cause for a search where they corroborate a reliable informant's tip about drug activity at a residence <u>by conducting a single controlled buy of illegal narcotics</u>." 42 F.3d at 652. <u>See</u> <u>also</u> <u>United States v. Allen</u>, 960 F.2d 1055, 1057 (D.C. Cir.), <u>cert.</u> <u>denied</u>, 506 U.S. 881 (1992); <u>United States v. Branch</u>, 545 F.2d 177, 179-80 (D.C. Cir. 1976).

<u>Warren</u> was a case with facts virtually identical to the instant one. There, the defendant was charged with possession of cocaine with intent to distribute, as a result of a search warrant that was executed at his apartment. 42 F.3d at 647. The affidavit in support of the application for the search warrant described that a reliable confidential informant was aware that drugs recently had been stored and sold at the apartment and that a controlled buy was conducted in

which the informant entered the apartment building with police funds and left a short time later with a quantity of crack cocaine. Id. at 650. Also according to the affidavit, the informant stated to police that he had purchased the substance from the apartment where the defendant lived. Id. A search warrant was subsequently issued and a subsequent search of the apartment resulted in the seizure of evidence for which the defendant was eventually charged. Id. at 650-51.

The defendant in Warren, like defendant in the present case, challenged the district court's denial of his motion to suppress evidence, contending that the magistrate who issued the search warrant incorrectly found probable cause. Id. at 652. The Court of Appeals rejected the defendant's contention and instead held that "a reliable informant's tip, in conjunction with a controlled buy in the suspect apartment – albeit unobserved – provided the magistrate with a substantial basis for his finding of probable cause." Id. at 653.

The showing of probable cause in the affidavit in the present case is at least as compelling as that in Warren. Indeed, Officer Thorne's nighttime surveillance of the residence gives substantial corroboration to the controlled buy that took place a short time before. Her observations of heavy pedestrian traffic entering and leaving the residence during these hours, in light of her training and experience as a narcotics investigator, led her to conclude that drug activity was occurring inside the residence. Thus, Thorne's observations, in conjunction with the controlled buy in defendant's apartment, provided the judge with a substantial basis for a finding of probable cause in this case. See, e.g., United States v. Lincoln, 992 F.2d 356, 358 (D.C. Cir. 1993) (informant's reliable information and the officers' personal observations established probable cause to arrest the defendant for drug distribution).

Moreover, to the extent that defendant further argues that the search warrant in this case is somehow defective, see Defendant's Motion, at 4-5, defendant's argument fails. United States v. Leon, 468 U.S. 897 (1984), recognizes a "good faith" exception to the Exclusionary Rule. See generally LaFave, W.R., Search and Seizure, vol. 1, § 1.3(f) (West 3d ed. 1996). At its core, Leon directs that evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate is admissible in the Government's case-in-chief despite the fact that the search warrant is ultimately found to be unsupported by probable cause. Id. at 923. This is so, unless the officer lacks "reasonable grounds for believing that the warrant was properly issued." Id. at 922.

In this case, the affidavit was drafted by an experienced MPD detective. Further, the search warrant itself was issued by an experienced Superior Court Judge. Hence, the executing officers had every reason to believe that the search warrant was properly issued. As to the warrant, defendant's motion does not claim the existence of any patent technical defect. Nor does defendant's motion claim that the issuing Judicial Officer was not "detached and neutral," nor could it.[2]

Because the officers had "reasonable grounds for believing that the warrant was properly issued," and because the officers who executed the warrant acted in reasonable reliance that the search warrant was issued by a neutral and detached judge, the evidence seized in the execution of the search warrant should be admitted in the Government's case-in-chief. Further, because the officers reasonably relied upon the apparent propriety of the search warrant, the "good faith"

---

[2] Nor does defendant allege that the affidavit contains any false statement. See Franks v. Delaware, 438 U.S. 154 (1978).

exception to the Exclusionary Rule "saves" the evidence, in any event. For these reasons, defendant's motion is without merit and should be denied.

WHEREFORE, for each of the reasons set forth above, defendant's motion is without merit and therefore should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney
Bar No. 498610

By: _____/s/_____
DONNELL W. TURNER (Maryland Bar)
Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4235
Washington, D.C. 20530
(202) 305-1419
(202) 514-6010 (fax)

CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of April, 2007, a true and correct copy of the above and foregoing UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF IDENTITY OF CONFIDENTIAL INFORMANT AND TO SUPPRESS IDENTIFICATION EVIDENCE was served by First Class Mail, postage pre-paid, upon Harry Tun, Esquire, at 400 5th Street, N.W., Suite 300, Washington, D.C. 20001.

                                                  /s/
                                        _____
                                        Donnell W. Turner
                                        Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal Case No. 06-318 (ESH)** |
| | : | Motions Hearing: May 4, 2007 |
| **RICARDO SELDON,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**ORDER**

Upon consideration of Defendant Seldon's Motion to Suppress Tangible Evidence, the Opposition of the United States to said Motion, and the entire record herein, the Court is of the opinion and finds that Defendant's Motion is without merit and should be denied.  It is, therefore, this _____ day of _____, 200___,

**ORDERED** that Defendant Seldon's Motion to Suppress Tangible Evidence be, and it hereby is, **DENIED.**

_____
ELLEN S. HUVELLE
United States District Judge

Copies to:

Harry Tun, Esquire
Billy Ponds, Esquire
AUSA Donnell W. Turner