UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-318 (ESH) |
| : | |
| RICARDO SELDON : | Sentencing Date:  June 15, 2007 |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing in the instant case.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration no less than the mid-point of the applicable Guidelines range of 78-97 months.[1]  Further, the government strongly urges the Court to impose a sentence that runs consecutive to the sentence Defendant is presently serving for his recent conviction for a virtually identical offense.  The reasons for the government's recommendations are set forth below.

**I.    BACKGROUND**

at approximately 7:26 p.m. on October 25, 2005, members of the Fourth District Focus Mission Unit of the Metropolitan Police Department executed a D.C. Superior Court search warrant at 714 Oglethorpe Street, N.E., Washington, D.C., which is a three-bedroom residence.  During a search of Defendant's bedroom, officers located, underneath a mattress, a clear plastic bag containing several rocks of crack cocaine, and a Taurus 9mm handgun, serial number TOB40792, which was loaded with fifteen rounds of ammunition.  Also seized from the room were a surveillance monitor,

---

[1] See section II.B., infra.

which was attached to a video camera that depicted the exterior of the front entrance of the residence, numerous pieces of mail, including court-related documents, bearing Defendant's name and address, and $501 U.S. currency. Further, Defendant's grandparents, who were inside the residence when the warrant was executed, told police that the bedroom where the drugs and gun were found belonged to Defendant.

The drugs recovered from Defendant's bedroom were later confirmed to be 26.5 grams of crack cocaine, by a chemist employed by the Drug Enforcement Administration's chemical laboratory. Evidence also would have demonstrated that the drugs were knowingly and intentionally possessed by Defendant on October 25, 2006, and Defendant possessed the drugs with the specific intent and purpose of distributing it to others. Finally, given the very close proximity of the loaded handgun to the drugs, the evidence is very clear that the gun was possessed by Defendant in furtherance of his participation and desire to succeed in the drug trade.

## II.  SENTENCING CALCULATION

### A.  Statutory Minimum/Maximum

The minimum term of incarceration for the charge of Unlawful Possession With Intent to Distribute Five Grams or More of Cocaine Base, a Class B felony, is 5 years, and the maximum period that may be imposed is 40 years. In addition, the maximum fine is $2,000,000. See Presentence Report ("PSR") at ¶¶ 56, 69.

### B.  United States Sentencing Guidelines ("USSG") Calculation

The PSR writer in this case, U.S. Probation Officer Kelli Cave, has correctly calculated the Defendant's total offense level to be 27 and his criminal history category to be II. PSR ¶¶ 16-28. Thus, under these calculations, the Defendant's Guideline range for imprisonment for a violation of

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) is 78-97 months. PSR ¶¶ 57.

    C.    The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Booker, 543 U.S. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for

3

by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction.") (emphasis supplied); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert

commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III. DEFENDANT SHOULD BE SENTENCED TO A TERM OF INCARCERATION AT THE LOW END OF THE APPLICABLE GUIDELINES RANGE OF 151-188 MONTHS

The government respectfully recommends that the Court sentence the Defendant to a term of incarceration of no less than the mid-point of the applicable Guidelines range of 78-97 months. Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above. In addition, it would be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature and circumstances of the

offense, the history and characteristics of the defendant, and the need for the sentence imposed to, *inter alia*: "[1] reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense; [2] afford adequate deterrence to criminal conduct; and [3] protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1) and (2).

The Defendant's illegal conduct here is extremely serious and represents a very real and present danger to the community. The evidence in this case reflects that Defendant was selling drugs out of his home, despite the fact that he lived with his elderly grandparents. Not only did the Defendant keep the drugs and a loaded firearm stored in his bedroom, but he went so far as to place a video camera outside the residence and a monitor in his bedroom to watch his potential customers, his potential enemies, and the police approach the residence. Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this city and of violence against its citizens, Defendant's conduct here is especially reprehensible, and his punishment should communicate to Defendant in particular, and the community in general, that drug trafficking, especially while armed, will not be tolerated. A mid-level Guidelines range sentence would certainly reflect the seriousness of Defendant's overall conduct, and a sentence that is consecutive to the sentence Defendant is currently serving will ensure that he will be adequately punished for this offense. Such a sentence would certainly reflect the destructive effect of his conduct on the community, it would adequately protect the community from further crimes of the defendant, which, for the reasons stated below, seem inevitable, and it would afford adequate deterrence to overall criminal conduct.

Indeed, Defendant's conduct in this case should be viewed as particularly egregious, in light of the fact that less than four months before his arrest in this case, on June 28, 2005, Defendant was

arrested for conduct involving the possession with the intent to distribute crack cocaine and a firearm, just like the instant case. And, as a result of this conduct, on July 27, 2005, Defendant pled guilty to Possession of a Firearm in a School Zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4), Unlawful Possession With Intent to Distribute Cocaine, in violation of 22 D.C. Code § 48-904.01(a)(2)(A), and Carrying a Pistol Without a License, pursuant to 22 D.C. Code §§ 4504(a)(1).

Further, following his guilty plea on July 27, 2005, Defendant was released by the court and allowed to remain in the community awaiting his sentencing, which had been set for November 4, 2005. Yet it was while Defendant was on release in that case that Defendant committed the instant offenses. The fact that Defendant would dare to engage in such illegal behavior under such circumstances illustrates that Defendant learned nothing from his previous transgressions, even in the face of an impending determination of his fate by the court. In addition, it demonstrates an utter and complete disregard for the laws of this jurisdiction, as well as a great disrespect for the law and the court. Finally, Defendant's conduct reflects a strong tendency on his part to engage in unlawful behavior and it shows that he is not likely to be rehabilitated in the future.

In summary, given the facts and circumstances of this case, the defendant's criminal history, and the backdrop against which this offense occurred, a sentence of incarceration at no less than the mid-point of the the applicable Guidelines range of 78-97 months, to be served consecutive to the sentence Defendant is currently serving, is both reasonable and appropriate.

Finally, it should be noted that the Defendant has already received the benefit of the bargain as a result of accepting the government's generous plea offer in this case. Thus, he should not received the added benefit of a concurrent sentence. First, the Defendant's Guidelines take into

account his early acceptance of responsibility, for which he has received a three-point decrease in his offense level. See PSR ¶ 23. Had the defendant not received this benefit, his Guidelines range for incarceration would have been 108-135 months, rather than 78-97 months. Second, had the Defendant gone to trial and been convicted of Count 2 of the Indictment, he would have been subjected to a mandatory minimum sentence, and a resulting sentence would have to run consecutive to any other count of which he was convicted. Thus, in light of the generous plea agreement offered by the government and the substantial benefit Defendant has received from the terms of the offer, as well as his acceptance of responsibility, Defendant has already received all the leniency he should in this case.

## IV.    CONCLUSION

In summary, the advisory Guidelines range in this case provides for a reasonable sentence, one that takes into account the relevant sentencing factors set forth in 18 §3553(a).[2] The government

---

[2] It is the government's position that 18 U.S. C. § 3553(a)(2)(1), which directs that the sentencing court consider the "the nature and circumstances of the offense and the history and characteristics of the defendant," should not be read to mean that the sentencing court should take into account all of the defendant's personal characteristics in imposing a sentence of incarceration. Congress, in enacting the Sentencing Reform Act, specifically prohibited certain personal characteristics from being considered in sentencing. Thus, sentences cannot be based on a defendant's race, sex, national origin, creed or socioeconomic status. See 28 U.S.C §944(d). Other characteristics can be taken into account only to the extent they are relevant. Id. Congress specifically directed that the Commission assure that the guidelines reflected "the general inappropriateness" of considering certain factors, including the defendant's family ties and responsibilities, and community ties, in recommending terms of imprisonment. 28 U.S.C. § 944(e).

Thus while Congress contemplated that a defendant's age, family ties and responsibilities, community ties and similar factors may be appropriately considered with respects to incidents of sentencing other than incarceration, for example, the length and type of community service, the amount of a fine, or the conditions of probation, it recognized that these same factors have no place in determining whether and for how long a defendant should be imprisoned. We recognize that post-Booker, the Sentencing Guidelines are advisory. Nevertheless, the Guideline

therefore respectfully requests that the Court impose a sentence of incarceration at the mid-point of the applicable Guidelines range of 78-97 months, which would be served consecutive to the sentence Defendant currently serves, a term of supervised release as provided by statute, and any other terms and conditions that the Court deems appropriate.

        Respectfully,

        JEFFREY A. TAYLOR
        United States Attorney

        /s/

By:   Donnell W. Turner
      Assistant United States Attorney
      Maryland Bar
      Federal Major Crimes Section
      555 4th Street, N.W.  #4235
      Washington, DC 20001
      Tel. (202) 305-1419
      Fax (202) 514-6010

---

provisions with respect to limitations of factors to be considered in imposing sentence clearly reflect the will on Congress on this issue, see 28 U.S.C. § 944(e), therefore, we respectfully ask that these factors be given appropriate consideration by the Court.